UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE DAVID POLVERARI,<br>    Debtor, | : <br> : <br> : |
| DITECH FINANCIAL, LLC<br>f/k/a GREEN TREE SERVICING, LLC,<br>    Appellant, | :    Bankruptcy Petition No.<br> :    14-31711 (JAM)<br> : <br> :    Civil Action No.<br> :    3:15-cv-01500 (VLB) |
|     v. | : <br> : |
| DAVID M. POLVERARI and<br>WELLS FARGO BANK, N.A.,<br>SUCCESSOR BY MERGER TO<br>WELLS FARGO BANK SOUTHWEST, N.A.<br>f/k/a WACHOVIA MORTGAGE, FSB,<br>f/k/a WORLD SAVINGS BANK, FSB,<br>    Appellees. | :    September 30, 2016<br> : <br> : <br> : <br> : <br> : <br> : |

MEMORANDUM OF DECISION
FINDING DEBTOR'S MOTION TO STRIKE [DKT. NO. 6] MOOT
AND AFFIRMING BANKRUPTCY COURT ORDER

I. Introduction

This appeal arises from the Chapter 13 bankruptcy proceeding initiated by the Debtor David Polverari on September 12, 2014. Appellant Ditech Financial, LLC f/k/a Green Tree Servicing, LLC ("Ditech" or "Appellant"), appeals the Bankruptcy Court's denial of its Motion for Relief from Automatic Stay, [Dkt. No. 22, Appellant's Appendix ("Appendix"), at A490; Dkt. No. 9, Sept. 30, 2016 Transcript from Hearing on Motion for Relief from Stay ("9/30/2016 Tr."), at 36:15-43:23]. Appellees Mr. Polverari and Wells Fargo Bank, N.A. ("Wells Fargo") have filed briefs in response. Pending before the Court is Ditech's appeal, as well as Mr. Polverari's Motion to Strike Designation of Items for the Record, [see Dkt. No.

1

6.]. For the reasons that follow, the Motion to Strike is MOOT, and the Bankruptcy Court's decision on Ditech's Motion for Relief from Automatic Stay is AFFIRMED.

## II. Background

Unless otherwise noted, the parties do not dispute the facts that follow, and they are consistent with the Bankruptcy Court's factual findings.

On May 20, 2005, Mr. Polverari entered into an agreement with American Broker's Conduit ("ABC") for a $309,000.00 loan for the purchase of a home at 13 Katie Joe Lane, Branford Connecticut (the "Note"). [*See* Appendix at A72-74.] This loan was secured by an Open-End Mortgage Deed for that property (the "Mortgage"), which was duly recorded. [*See id.* at A75.] Mortgage Electronic Registration Systems ("MERS") was identified as "the mortgagee under this Security Instrument," "acting solely as a nominee for Lender and Lender's successors and assigns." [*See id.* at A75-89.] ABC then endorsed the Note to "Countrywide Document Custody Services, a division of Treasury Bank, N.A.," which in turn endorsed the Note to Countrywide Home Loans, Inc. ("CHL"). [*Id.* at A72-74.] CHL then endorsed the Note in blank. [*Id.* at A72-74.] While the record is somewhat ambiguous as to when these endorsements became effective, Mr. Polverari made mortgage payments to "Countrywide" as early as August 30, 2005. [*See id.* at A222-A223, A262-263.] On September 3, 2008, CHL recorded a release of the 2005 Mortgage (the "Release"), dated as of August 20, 2008. [*Id.* at A107; Dkt. No. 8, July 29, 2015 Transcript from Hearing on Motion for Relief from Stay ("7/29/2015 Tr."), at 4:8-5:4.]

2

MERS subsequently assigned the Mortgage to Bank of America, NA, successor by merger to BAC Home Loans Servicing LP f/k/a Countrywide Home Loans Servicing, LP, which in turn assigned the Mortgage to Appellant's predecessor, Green Tree Servicing, LLC. [Appendix at A90-91.] Appellant also claims that it has held the Note since 2013, [Dkt. No. 7, June 4, 2015 Transcript from Hearing on Motion for Relief From Stay ("6/4/2015 Tr."), at 6:23-7:4; 7/29/2015 Tr. at 12:17-20], although it has offered no evidence regarding how it came to hold the Note or from what entity the Note was acquired.

Ditech filed a Motion for Relief from Automatic Stay in order to commence, and prosecute to judgment, a foreclosure action against Mr. Polverari during the pendency of his Chapter 13 bankruptcy litigation. [Appendix at A65-69.] Mr. Polverari and Wells Fargo countered that Ditech was not entitled to a stay, because the Release meant that Ditech had no valid security interest in the property. [*Id.* at A98-127.] During one of three hearings on the motion, Ditech argued that the 2008 release was invalid because it was recorded "by somebody other than the titleholder," and because "being a holder of a note does not give the authority to release the mortgage." [7/29/2015 Tr. at 5:19-6:16.] Appellant further maintained that "MERS was the mortgagee of record; they're the only party entitled to release it. They didn't release it, and therefore the release is invalid." [*Id.* at 27:8-16.]

In an order from the Bench, Judge Manning held that she was "not at all convinced there is any statutory law, case law or anything else that [Ditech] can show me that somehow invalidates this release and allows [Ditech] to claim an

3

interest in the property that allows it to obtain relief from the stay from this Court." [9/30/2015 Tr. at 38:12-18.] She stated that no Connecticut law dictated that MERS was the only party entitled to release a mortgage, and that she did not agree with the argument that CHL could not release the mortgage because it was "outside of the chain of title." [*Id.* at 40:5-13.] Judge Manning further held that whether or not the mortgage was paid prior to CHL released it was irrelevant because the release was recorded "before that issue was ever resolved in any way, shape or form" and because "Countrywide thought it was paid" when it executed and recorded the release. [*Id.* at 40:20-41:1.]

### III. Standard of Review

Jurisdiction over this appeal is conferred by 28 U.S.C. § 158(a)(1). In reviewing the judgment of a bankruptcy court, Federal Rule of Bankruptcy Procedure 8013 provides that "[f]indings of fact . . . shall not be set aside unless clearly erroneous." "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quoting United States v. Gypsum Co., 222 U.S. 364, 395 (1948)). "The bankruptcy court's conclusions of law, however, are reviewed de novo." *In re Guadalupe*, 365 B.R. 17, 19 (D. Conn. 2007).

4

IV.   **Analysis**

   A. **Motion to Strike**

Mr. Polverari filed concurrent and identical motions to strike items from Ditech's Designation of Record.  [*See* Dkt. No. 6; Bankruptcy Dkt. Nos. 70, 92.] On January 15, 2016, the Bankruptcy Court issued an order granting Mr. Polverari's Motion to Strike with respect to items 23-28, 30-33, 35-36, and 38-52, and denying it with respect to items 29, 34, and 37.  This Court need not decide the motion filed in the District Court in light of the Bankruptcy Court's decision. Federal Rule of Bankruptcy Procedure 8009(e) delegates to the Bankruptcy Court the authority to decide any disputes "about whether the record accurately discloses what happened in the bankruptcy court" and to conform the record accordingly.  This Court will not disturb the Bankruptcy Court's holding, because "the bankruptcy court knows best what was before it and what it considered in making its ruling."  *In re Ames Dep't Stores, Inc.*, 320 B.R. 518, 521 (Bankr. S.D.N.Y. 2005).  This Court therefore holds the Motion to Strike [Dkt No. 6] MOOT, and notes that in deciding this appeal, it considered only those documents not stricken from the record by the Bankruptcy Court.

   B. **Motion for Relief from Stay**

Ditech brought its Motion for Relief from Stay pursuant to 11 U.S.C. § 362(d), which provides in relevant part that "[o]n request of a party in interest and after notice and a hearing, the [bankruptcy] court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in

5

property of such party in interest; [or] (2) with respect to a stay of an act against property under subsection (a) of this section, if— (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." To qualify for relief, "it is necessary that the party seeking such relief be a 'party in interest.'" *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983) (citing 11 U.S.C. § 362(d)) (holding that a bank was not a party in interest with standing to seek relief from a stay where "the bankrupt has no obligation on the mortgage.") The heart of the parties' dispute is whether Ditech is a "party in interest" that could be entitled to relief under Section 362(d). While Appellant presented ten separate issues for appeal, Appellant's status as a party in interest can be resolved by addressing two larger issues: (1) the burden of proof on a motion for relief from stay; (2) the validity of the Release.

   1. <u>**Burden of Proof**</u>

Pursuant to 11 U.S.C. § 362(g), a party seeking relief under 11 U.S.C. § 362(d) "has the burden of proof on the issue of the debtor's equity in property," and "the party opposing such relief has the burden of proof on all other issues." Appellant cites in Section 362(g) in support of its argument that Appellees bear the burden of proving that Ditech is not a party in interest, but this argument fails for at least two reasons. First, it rests on faulty logic: Section 362(g) presupposes that the party seeking relief has already shown itself to be a party in interest. Its delineation of the burdens each party must bear is therefore irrelevant to who bears the burden of proving that the party is a party in interest. Second, numerous courts—including in this District—have held that the party

6

seeking relief bears the burden of proving that it is a party in interest. *See, e.g.*, *In re McKenzie*, 737 F.3d 1034, 1039 (6th Cir. 2013) (expressly rejecting the argument that Section 362(g) places the burden of proving that a security interest is valid on the party opposing relief); *In re Speer*, No. 14-21007 (AMN), 2015 WL 5601469, at *3 (Bankr. D. Conn. Aug. 13, 2015) ("Movant bears the burden of demonstrating . . . that its claim is secured by a valid, perfected lien in property of the estate . . . . If the movant does not sustain its burden, the Court must deny the motion."); *In re Briarwood Acquisition, LLC*, No. 15-20596 (AMN), 2015 WL 5601351, at *3 (Bankr. D. Conn. Aug. 7, 2015) ("[T]he creditor bears the initial burden of demonstrating the quantum of its claim and its security interest in the real property" on a motion under Section 362(d).); *In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994) (stating that "a party can bear the initial burden of going forward even if it does not bear the ultimate burden of persuasion," and holding that "the secured creditor who seeks relief from the automatic stay under § 362(d)(2) must demonstrate . . . that its claim is secured by a valid, perfected lien in property of the estate").

Notably, Appellant cited only one case in support of its position on this issue: *In re Sonnax Industries Inc.*, 907 F.2d 1280 (2d Cir. 1990). Wells Fargo correctly notes that this case is inapposite, in that it discusses a movant's burden to show cause under Section 362(d)(1), but does not speak to a movant's burden to show that it is a party in interest. *See id.* at 1285-88. The Bankruptcy Court therefore rightfully placed on Ditech the burden of showing that it had a valid security interest in the property.

### 2. Validity of Release

In order to decide whether Ditech has a valid security interest in the property at issue, the Court must determine whether the Release was valid. To accomplish this, the Court must examine (a) which entities held the Note and Mortgage at the time the Release was recorded; and (b) if CHL was entitled to release the Mortgage and what effect the Release had on the Mortgage. The Court applies Connecticut law because "property interests are created and defined by state law . . . [and] there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." See *Butner v. United States*, 440 U.S. 48, 55 (U.S. 1979). For reasons set forth more fully below, the Court holds that Ditech failed to demonstrate that the Release was invalid, and by extension cannot establish that it has a valid security interest.

### a. Bankruptcy Court Finding that CHL Held the Note on August 20, 2008 Was Not Clearly Erroneous

Ditech's argument that "there is absolutely no evidence to establish the identity of the noteholder and/or note owner" on the date of the Release is both inaccurate and represents a misunderstanding of the burdens in this case. As Ditech itself admits, the record contains evidence that the Note was endorsed to CHL, that Mr. Polverari began making payments to "Countrywide" as early as August 2005, and that "Countrywide" was listed on a February 9, 2007 HUD-1A Settlement Statement. [*See* Appellant's Principal Brief ("Dietech Br.") at 25 (citing Appendix A72-74, A222-23, A225, A262-63, A265-68).] This evidence supports an

8

inference, consistent with the Bankruptcy Court's finding, that CHL held the Note when it released the Mortgage. [*See* 7/29/2015 Tr. at 4:8-6:18; 9/30/2015 Tr. at 32:16-33:22.] Ditech offered no evidence to rebut such an inference, choosing instead to argue that the evidence was inconclusive and to rest on its misplaced belief that Appellees bore the burden of proof on this issue. [*See* Ditech Br. at 24-27.] This Court may not overturn the Bankruptcy Court's finding that CHL held the Note when it released the Mortgage absent clear error, *see* Fed. R. Bankr. P. 8013, and no clear error exists here.

### b. CHL Was Authorized to Release the Mortgage

The parties agree that MERS was the mortgagee of record at the time of the Release, but differ regarding the effect of the Mortgage's qualification that MERS was the mortgagee "solely as nominee for Lender and Lender's assigns." Ditech argues that because the mortgage stated that MERS was "the mortgagee under this Security Instrument" that it had the sole right to release the mortgage. [*See* Ditech Br. at 10 (citing Appendix at A75).] This interpretation is at odds with both Connecticut law and the Mortgage's plain language.

Ditech expounds at length about the title theory of mortgages, arguing that because MERS held legal title, MERS was the only entity capable of validly releasing the Mortgage. [*See* Ditech Br. at 12-15.] However, the authorities that it cites are largely irrelevant. Some discuss rights of title vis-à-vis mortgagors and mortgagees. *See, e.g., Chamberlain v. Thompson*, 10 Conn. 243, 243 (1834) (discussing the allocation of legal and equitable title in the context of a dispute involving obsolete property rights like dower and courtesy). Others are statutes

9

that tell the Court little about the rights and obligations of lenders or note-holders relative to nominee mortgagees like MERS, and do not limit a note-holder's right to release a mortgage. *See, e.g.,* Conn. Gen. Stat. § 47-10 (requiring conveyances of land to be recorded and providing no guidance regarding the transfer of a note or the effect of such a transfer on a security interest); Conn. Gen. Stat. § 47-36h (stating that a mortgage deed creates a security interest and that conditions can be added by agreement); Conn. Gen. Stat. § 49-8 (stating that "a mortgagee *or a person authorized by law to release a mortgage*" (emphasis added) must release the mortgage upon satisfaction); § 49-9a (providing a remedy for the borrower in the event of an improperly released mortgage).

Ditech also cites *MERSCORP Holdings, Inc. v. Malloy* in support of its assertion that MERS was the "mortgagee of record" in this case. [*See* Ditech Br. at 16 (citing *MERSCORP Holdings, Inc. v. Malloy,* No. X04HHDCV136043132S, 2014 WL 2854013, at *1 (Conn. Super. Ct. May 19, 2014), *aff'd,* 320 Conn. 448 (2016).] The relevant question is not whether MERS was the "mortgagee of record" but whether this prevented CHL from executing a valid release. The Connecticut Supreme Court decision affirming *MERSCORP* is instructive on this issue. It contains a lengthy description of the purpose of MERS as a private recording system used to facilitate the securitization of mortgages, which states in relevant part:

> Both the loan itself and the servicing rights may be sold or transferred multiple times over the life of a loan. Under the common-law rule, as codified in many states, the mortgage follows the note, so that an investor who acquires a residential note automatically obtains the attached security interest as well . . . . Recording a mortgage with MERS as a mortgage nominee essentially creates a placeholder for the electronic MERS system

10

> in the public records, allowing the two systems to interoperate. That is to say, if a party searching the chain of title on a property comes upon a recorded mortgage to MERS, the party is thereby notified that the MERS database may be consulted to determine the present beneficial owner of the mortgage and loan, as well as any related servicing rights or subordinate security interests.

*MERSCORP Holdings, Inc. v. Malloy*, 320 Conn. 448, 453–55 (2016). Notably, the court drew a clear distinction between a mortgage nominee and the beneficial owner of a mortgage. *Id.*

Ditech also incorrectly asserts that the common law principle that "the mortgage follows the note" only applies in foreclosure proceedings. It bases this argument on the fact that the statute codifying it, Conn. Gen. Stat. § 49-17, speaks specifically to foreclosure, and because many of the cases discussing the principle do so with respect to foreclosures. However, the Connecticut Supreme Court has not limited the principle this way. Rather, it has stated that a mortgage is "'incident only to the debt . . . [and] the assignee must hold it, at the will and disposal of the creditor.'" *J.E. Robert Co. v. Signature Properties, LLC*, 309 Conn. 307, 318 (2013) (quoting *Huntington v. Smith*, 4 Conn. 235, 237 (1822)). This means that "only the rightful owner of the note has the right to enforce the mortgage." *Id.* at 323. Additionally, *MERSCORP*, which distinguished between a nominee and beneficial mortgagee, had nothing to do with foreclosure. *See MERSCORP*, 320 Conn. at 451, 455-56 (affirming lower court judgment that state law levying higher recording fees for any "nominee of a mortgagee" was constitutional.)

The Mortgage itself also supports a finding that CHL was entitled to release it. The Mortgage states in its "Transfer of Rights in the Property" section:

11

> "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security instrument, but, if necessary to comply with law or custom, MERS (*as nominee for Lender and Lender's successors and assigns*) has the right to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property, and to *take any actions required of Lender* including, but not limited to, releasing and canceling this Security Instrument."

[Appendix at A77 (emphasis added).] This language only grants MERS the right to act on the Lender's behalf—it neither obligates MERS to do so nor strips from the Lender the power to take the same actions. A later provision supports this interpretation:

> "Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and *Lender shall release this Security Instrument.*"

[*Id.* at A87 ¶ 23 (emphasis added).] General principles of construction counsel "giving the contract's words their ordinary meaning and one that renders its provisions consistent." *C & H Elec., Inc. v. Town of Bethel,* 312 Conn. 843, 853 (2014). Reading the "Transfer of Rights" section to preclude the Lender from effecting a release needlessly reads into the Mortgage a conflict with Paragraph 23. Ditech has offered no evidence (1) that CHL was not the "Lender" when it released the Mortgage, or (2) that CHL and MERS entered into any subsequent agreement which granted MERS the sole right to release the Mortgage. The Court therefore cannot credit Ditech's argument that CHL lacked authorization to release the Mortgage.

### c. Whether the Loan was Paid is Irrelevant to the Validity of the Release

Included in the record on appeal is evidence that Mr. Polverari's wife, Jaqueline Polverari, misappropriated funds intended to satisfy the obligations created by the Note and Mortgage.  [*See* Compl., *U.S. Bank Nat'l Assn'n v. Polverari*, 10-03060 (Bankr. D. Conn. September 10, 2010); Docket Sheet, *USA v. Polverari*, 3:12-cr-00210 (D. Conn.); Petition to Enter Plea of Guilty, *USA v. Polverari*, 3:12-cr-00210 (D. Conn. Sept. 20, 2013.][1]  Ditech asks this Court to hold the Bankruptcy Court's finding that the underlying mortgage loan was paid clearly erroneous.  [*See* Ditech Br. at 38-42.]  As an initial matter, the Bankruptcy Court made no such finding, and therefore did not rely on this finding to deny Dietech's motion.  [*See* 9/30/16 Tr. at 41:2-7 ("The issue about Mrs. Polverari . . . [is] irrelevant to the issue of . . . the release of the mortgage."); 7/29/2016 Tr. at 13:16-14:7 (Whether or not the loan was paid "has nothing to do with whether or not [Appellant] can foreclose on the property.").]

Additionally, while Ditech spends five full pages of its brief explaining that Mrs. Polverari committed fraud and that the loan was not paid off, it offers no argument regarding why it believes this is relevant to the validity of the release. Connecticut General Statutes § 42a-3-604(a) provides, "A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act . . . or (ii) by agreeing not to sue or *otherwise renouncing rights against the party by a*

---

[1] While these documents establish that Ms. Polverari committed fraud, they include no evidence that Mr. Polverari was aware of or participated in this fraud. *See id.*

13

*signed writing.*"  The release of a mortgage constitutes such a renunciation.  *See, e.g., Sav. Bank of Danbury v. 60 Shelter Rock Associates, LLC*, No. CV116006248, 2013 WL 3315001, at *8 (Conn. Super. Ct. June 5, 2013) (stating than an agreement to forebear from foreclosing a mortgage constitutes a discharge when the agreement is in writing); *Capital One, N.A. v. Hutchins-Orsi*, No. LLICV116003748S, 2012 WL 5476878, at *3 (Conn. Super. Ct. Oct. 16, 2012) (holding that the release of a mortgage constitutes a renunciation of the right to foreclose pursuant to Section 42a-3-604(a), and that the release could be valid as between the original parties even if it was unrecorded).  This suggests that payment is not necessary to effect a valid release.

To the extent that Ditech seeks to challenge the validity of the Release and assert that it has a mortgage on the property, its remedy is to file a civil action to quiet the title and a notice of *lis pendens* to foreclose subsequent encumbrances. [*See* Conn. Gen. Stat § Sec. 52-325].  In view of Mrs. Polverari's fraudulent refinancing of the property at issue, providence dictates full adjudication of the claims to the property.

Because the Bankruptcy Court's factual finding that CHL held the Note when it released the Mortgage was not clearly erroneous, and because Ditech failed to establish that MERS had the sole authority to effect a release, the Release was valid.  This Court therefore AFFIRMS the Bankruptcy Court's decision that Ditech has no valid security interest in the Debtor's property, and is therefore not a "party in interest" entitled to relief.

## V. Conclusion

For the foregoing reasons, the Court finds Debtor's Motion to Strike MOOT, and AFFIRMS the Bankruptcy Court's denial of Ditech's Motion for Relief from Stay.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  September 30, 2016